UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| TOMTOM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 12-10348-JLT |
| NORMAN IP HOLDINGS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION
ON DEFENDANT'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION**

July 26, 2012

DEIN, U.S.M.J.

## I. <u>INTRODUCTION</u>

Plaintiff TomTom, Inc. ("TomTom"), a Massachusetts corporation, has brought this action against Norman IP Holdings, LLC ("Norman"), a Texas corporation and the purported owner of numerous patents, including U.S. Patent Nos. 5,530,597 (the "'597 Patent"), 5,502,689 (the "'689 Patent"), and 5,608,873 (the "'873 Patent"). After Norman sued TomTom for patent infringement in the United States District Court for the Eastern District of Texas, TomTom filed its complaint in this court seeking a declaratory judgment that it has not infringed, and has not committed any acts which would give rise to liability for infringement, of any properly construed, valid and/or enforceable claims of the 597, 689 or 873 Patents.

The matter is presently before the court on "Norman IP Holdings, LLC's Motion to Dismiss for Lack of Personal Jurisdiction" (Docket No. 8), by which the defendant is seeking dismissal, pursuant to Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction. The critical issue raised by the motion is whether Norman's infringement litigation against TomTom in Texas, and its prior engagement of patent counsel in Massachusetts, constitute sufficient contacts with Massachusetts such that maintenance of the plaintiff's action in this forum comports with "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (quotations and citations omitted). As detailed below, this court finds that under the controlling authority of the Federal Circuit,[1] Norman's contacts with Massachusetts are not adequate to subject it to personal jurisdiction in this court. Therefore, and for all the reasons described herein, this court recommends to the District Judge to whom this case is assigned that the defendant's motion to dismiss be ALLOWED.

## II.  STATEMENT OF FACTS

"On a motion to dismiss for want of personal jurisdiction, the plaintiff ultimately bears the burden of persuading the court that jurisdiction exists." Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009), and cases cited. However, where, as here, "the district court's disposition as to the personal jurisdiction question is based on

---

[1]  "The issue of personal jurisdiction in a declaratory action for non-infringement is 'intimately related to patent law' and thus governed by Federal Circuit law[.]" Breckenridge Pharm., Inc. v. Metabolite Labs, Inc., 444 F.3d 1356, 1361 (Fed. Cir. 2006) (quoting Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1201 (Fed. Cir. 2003)).

affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a *prima facie* showing that [the defendant is] subject to personal jurisdiction." Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1349 (Fed. Cir. 2003). The court, in evaluating whether the plaintiff has met this burden, "must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." Id. Applying this standard to the instant case, the relevant facts are as follows.[2]

## **The Parties**

The plaintiff, TomTom, is a Massachusetts corporation having a principal place of business in Concord, Massachusetts. (Compl. ¶ 1). TomTom is in the business of manufacturing global positioning devices, and claims to be a leading producer of such devices. (See id. ¶ 6; Pl. Opp. Mem. (Docket No. 12) at 3). The defendant, Norman, is a limited liability company which was founded in 2010. (Mancinelli Decl. ¶¶ 1, 3). It is organized under the laws of the State of Texas, and is the purported owner of numerous patents, including the '597, '689 and '873 Patents at issue in this case (the "Patents-in-Suit"). (Id. ¶ 3; Compl. ¶ 2). According to Norman, the company maintains a principal

---

[2] The facts are derived from: (1) TomTom's Complaint for Declaratory Judgment (Docket No. 1) ("Compl."); (2) the Declaration of Mark Mancinelli ("Mancinelli Decl."), which is attached to the Memorandum in Support of Defendant Norman IP Holdings, LLC's Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 9); (3) the Declaration of Michael J. Collins ("Collins Decl.") (Docket No. 13); and (4) the exhibits attached to the Declaration of Michael R. Gottfried (Docket No. 14) ("Pl. Ex.__").

place of business in Tyler, Texas. (Mancinelli Decl. ¶ 3). However, it does not appear to have any full-time employees or operations at that location. (See Collins Decl. ¶¶ 4-7).

TomTom contends that Norman's sole business consists of licensing and enforcing through litigation the patents that it has acquired. (Pl. Opp. Mem. at 2, 5). The plaintiff has not alleged any facts or put forth any evidence to support this contention. Nevertheless, it is undisputed that Norman does not design, manufacture or sell any products relating to the three Patents-in-Suit. (Mancinelli Decl. ¶ 5). It is also undisputed that Norman has prosecuted two infringement actions the United States District Court for the Eastern District of Texas, and that one of those lawsuits, which Norman initiated in January 2012, includes claims against TomTom for infringement of each of the Patents-in-Suit. (See id. ¶ 4; Pl. Opp. Mem. at 3; Pl. Ex. F).

### Norman's Contacts with Massachusetts

The record shows that Norman is not licensed to do business in Massachusetts, has no employees and pays no taxes here, and maintains no offices, places of business or other facilities in the Commonwealth. (Mancinelli Decl. ¶ 7). Nor does the defendant own property, maintain any post office boxes, bank accounts or telephone listings, or have a registered agent for service of process in Massachusetts. (Id.). Additionally, Norman has never voluntarily submitted to the jurisdiction of any court or administrative tribunal in Massachusetts, has not executed or performed any contracts in the Commonwealth, and to the best of its knowledge, none of its employees reside in Massachusetts or have ever traveled to the State in order to conduct business on its behalf. (Id. ¶¶ 5, 6, 8). Moreover,

according to Norman's Managing Director, the company does not manufacture, offer for sale or sell any products in the Commonwealth, does not ship any products into the forum, does not advertise any products directly to the Massachusetts market, and has no regular channels for customer service here. (Id. ¶¶ 5, 7). Whether this is due to the fact that Norman's only business activities involve the licensing and enforcement of patents that it owns, as the plaintiff argues, or whether it is due to the fact that Norman chooses not to conduct such operations in Massachusetts, is unclear from the record.

Despite the fact that Norman does not hold itself out as doing business in Massachusetts, TomTom contends that the defendant and the predecessor assignee of the Patents-in-Suit, Saxon Innovations, LLC ("Saxon"), have conducted business in this forum by working repeatedly with lawyers at the Boston office of Pepper Hamilton LLP to file lawsuits for infringement, allegedly of the Patents-in-Suit. (Pl. Opp. Mem. at 2). The record shows that attorneys from Pepper Hamilton's Boston office represented Saxon in six separate patent infringement actions that Saxon filed against various defendants, although the suits were not filed in Massachusetts, but rather in the Eastern District of Texas. (Pl. Ex. B-G). It appears that Norman was substituted for Saxon as the plaintiff in one of those actions after Saxon's involvement was terminated on August 11, 2010, and that Saxon's Boston counsel continued to represent Norman until the case was closed on April 27, 2011. (Pl. Ex. F). However, TomTom has not provided any evidentiary support for its assertion that these infringement actions concerned any of the Patents-in-Suit.

TomTom argues that Saxon's contacts with Boston counsel should be considered in assessing whether this court has personal jurisdiction over Norman because Saxon is allegedly Norman's "predecessor." However, apart from presenting evidence indicating that Norman shares vacant office space with Saxon in Tyler, Texas, TomTom has not put forth any facts regarding the nature of the relationship between Norman and Saxon. (See Pl. Opp. Mem. at 5; Collins Aff. ¶¶ 6-7). Therefore, it is unclear whether Norman is the legal successor to Saxon or merely an assignee of the patents involved in the Texas litigation.

The record establishes that in 2010, Norman was represented by lawyers from Pepper Hamilton's Boston office in connection with a lawsuit filed against it in the United States District Court for the Southern District of California. (Pl. Ex. A). During the course of the litigation, Norman filed a motion to dismiss or transfer venue to the Eastern District of Texas in which it stated that all of its documents, including those pertaining to the validity of the patents at issue in that matter, were located at its headquarters in Tyler, Texas or at the offices of its counsel in Boston, Massachusetts. (Id.). While TomTom argues that the California matter involved one of the same patents that is at issue in the present case, it has not presented any evidence to support that contention. (See Pl. Opp. Mem. at 2). TomTom contends that the fact that Norman reported that documents were located at its counsel's office in Massachusetts constitutes a significant contact for purposes of establishing personal jurisdiction over Norman in this court.

Additional factual details relevant to this court's analysis are described below where appropriate.

## III.  ANALYSIS

### A.  Personal Jurisdiction - Generally

Norman argues that this case should be dismissed because it has not had sufficient contacts with Massachusetts to render it amenable to suit in this forum.  "Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process."  Avocent Huntsville Corp. v. Aten Int'l Co., Ltd., 552 F.3d 1324, 1329 (Fed. Cir. 2008) (quoting Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1359 (Fed. Cir. 2001)).  The Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3 (2000), authorizes jurisdiction over the person to the limits allowed by the federal Constitution.[3]  See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002) ("[T]he Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute 'as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.'" ) (quoting "Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp., 361 Mass. 441, 443, 280 N.E. 2d 423, 424 (1972)).  Accordingly, the "jurisdictional analysis

---

[3]  The Massachusetts long-arm statute defines "person" to include corporations.  Mass. Gen. Laws ch. 223A, § 1.

collapses into a single determination of whether the exercise of personal jurisdiction comports with due process." Avocent Huntsville Corp., 552 F.3d at 1329.

Due process requires the court to determine whether the defendant has maintained "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Wash., 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L. Ed. 278 (1940)). "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano County, 480 U.S. 102, 109, 107 S. Ct. 1026, 1030, 94 L. Ed. 2d 92 (1987) (quotations and citation omitted). "In short, the Due Process Clause requires a court to determine whether a defendant 'should reasonably anticipate being haled into court there.'" LSI Indus. Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1375 (Fed. Cir. 2000) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 490 (1980)).

"Under the 'minimum contacts' test, a defendant may be subject to either specific jurisdiction or general jurisdiction. Specific jurisdiction 'arises out of' or 'relates to' the cause of action even if those contacts are 'isolated and sporadic.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73, 105 S. Ct. 2174, 2182, 85 L. Ed. 2d 528 (1985)). "General jurisdiction arises when a defendant maintains 'continuous and systematic' contacts with the forum state even when the cause of action has no relation to

those contacts." Id. (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16, 104 S. Ct. 1868, 1872-73, 80 L. Ed. 2d 404 (1984)).  In the instant case, TomTom has alleged only that Norman is subject to specific personal jurisdiction. (Compl. ¶ 3).  However, it argues that Norman's past business dealings with its Boston lawyers are extensive enough to establish general jurisdiction.  (Pl. Opp. Mem. at 5). Therefore, this court will consider whether the defendant may be subject to personal jurisdiction under either standard.

### B.    General Jurisdiction Analysis

"The assertion of general jurisdiction comports with due process when two criteria are met.  First, there must be continuous and systematic general business contacts between the foreign defendant and the forum.  Second, the plaintiff must show that the exercise of jurisdiction would be reasonable." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 619) (1st Cir. 2001) (internal quotations and citation omitted).  See also Hockerson-Halberstadt, Inc. v. Propet USA, Inc., 62 Fed. Appx. 322, 337-38, 2003 WL 1795641, at **12-13 (Fed. Cir. Apr. 1, 2003) (unpub. op.) (considering whether defendant's contacts with forum were continuous and systematic, and applying fairness analysis in determining whether court had general jurisdiction over defendant under Federal Circuit law). Because the record does not establish that Norman has maintained continuous and systematic business contacts with Massachusetts, the plaintiff has failed to meet the criteria necessary for general jurisdiction.

"Neither the United States Supreme Court nor [the Federal Circuit] has outlined a specific test to follow when analyzing whether a defendant's activities within a state are 'continuous and systematic.' Instead, a court must look at the facts of each case to make such a determination." LSI Indus. Inc., 232 F.3d at 1375. The factors that courts consider in assessing whether a defendant's activities are sufficient to establish general jurisdiction include, but are not limited to:

> (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

3M Innovative Props. Co. v. Infocus Corp., No. Civ. 04-0009 JNE/JGL, 2005 WL 361494, at *2 (D. Minn. Feb. 9, 2005) (analyzing personal jurisdiction under Federal Circuit law). See also Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1533 (10th Cir. 1996) (listing factors) (cited with approval in Delta Sys., Inc. v. Indak Mfg. Corp., 4 Fed. Appx. 857, No. 00-1225, 2001 WL 103518, at *3 (Fed. Cir. Feb. 2, 2001) (unpub. op.)). A court may only exercise general jurisdiction over an out-of-state defendant where "the continuous corporate operations within [the] state [are] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." Int'l Shoe Co., 326 U.S. at 318, 66 S. Ct. at 159.

In the instant case, the record shows that Norman maintains no offices, employees or operations in Massachusetts, does not manufacture, sell or advertise any products here,

does not solicit business in the Commonwealth, and does not otherwise hold itself out as doing business in the forum. (See Mancinelli Decl. ¶¶ 5-7). Nevertheless, TomTom asserts that Norman's past dealings with Pepper Hamilton are sufficient to establish general jurisdiction over the defendant. (Pl. Opp. Mem. at 5). Specifically, it contends that Norman and Saxon were represented by attorneys from the Boston office of Pepper Hamilton in at least seven other lawsuits involving the Patents-in-Suit. It further argues that because Norman's business consists solely of litigating patents, its contractual arrangements with Pepper Hamilton constitute some of the company's main contractual relationships. (Id.).

This court finds that TomTom's arguments lack both legal and factual support. As an initial matter, TomTom has not cited to any authority in which a court has invoked general jurisdiction over a company because it hired attorneys in the forum in order to litigate matters elsewhere. See In re Chocolate Confectionary Antitrust Litig., 602 F. Supp. 2d 538, 567 n. 29 (M.D. Pa. 2009) (declining to predicate general jurisdiction on defendant's retention of counsel to effectuate transactions which fail on their own to establish such jurisdiction). The Supreme Court has long held that the existence of a contractual relationship between a non-resident defendant and a forum resident, without more, is insufficient to establish minimum contacts for purposes of personal jurisdiction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478, 105 S. Ct. 2174, 2185, 85 L. Ed. 2d 528 (1985) ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home

forum, we believe the answer clearly is that it cannot."). Therefore, TomTom has not shown that Norman's relationship with Pepper Hamilton's Boston office alone is sufficient to support general jurisdiction.

Furthermore, TomTom has not alleged any facts or presented any evidence to support its contention that Norman is engaged in the business of litigating patents or that its relationship with Pepper Hamilton has been crucial to its business. In fact, there is evidence in the record that Norman has been represented by non-Massachusetts counsel as well. (See, e.g., Pl. Ex. F). Moreover, TomTom has failed to establish that Saxon's conduct should be imputed to Norman. While "courts have recognized that the jurisdictional contacts of a predecessor corporation may be imputed to its successor corporation without offending due process[,]" courts also "have determined that an assignee does not step automatically into the shoes of an assignor for purposes of personal jurisdiction." Purdue Research Found. v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 783-84 (7th Cir. 2003). There is nothing in the record indicating whether Norman is a successor to Saxon rather than an assignee of its patents. Accordingly, TomTom's assertion that Norman's Boston attorneys represented the defendant in at least seven lawsuits lacks any factual basis. At most, the record establishes that sometime after Norman was founded in 2010, attorneys from Pepper Hamilton's Boston office represented it in two patent-related lawsuits in Texas and California, and that Pepper Hamilton continued to represent Norman until at least April 27, 2011, when the Texas case was terminated. (See Pl. Exs. A & F).

Even attributing Saxon's contacts with Pepper Hamilton to Norman and assuming that the attorney-client relationship involved various communications between Norman and its Boston-based attorneys, the maintenance of relevant documents at the attorneys' offices, and possibly visits by Norman personnel to the Boston offices of Pepper Hamilton, Norman's contacts with Massachusetts still would be more limited than in other cases where the defendant's contacts were deemed inadequate to support the assertion of general jurisdiction.[4] See, e.g., Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 411, 418, 104 S. Ct. at 1870, 1874 ($4 million worth of purchases made in forum over seven year period, and visits to forum by personnel for training and technical consultation purposes insufficient to warrant assertion of general jurisdiction); Autogenomics, Inc. v. Oxford Gene Tech. Ltd., 566 F.3d 1012, 1014-18 (Fed. Cir. 2009) (holding that California court lacked general jurisdiction over defendant where contacts included, but were not limited to, numerous licensing agreements with California companies, attendance at four conferences in the forum, collaborative agreement with company having offices in California, and $7,600 worth of sales to California company); Swiss Am. Bank, Ltd., 274 F.3d at 619-20 (finding that contacts with United States were insufficient to support general jurisdiction where defendant placed twelve advertisements in American

---

[4]  Although TomTom argues that Norman's employees would have engaged in extensive communications with the company's Boston counsel, and it is likely that such employees would have traveled to Boston to meet with the company's lawyers, it has not presented any evidence to support this argument or to establish the frequency with which Norman personnel actually had contact with Pepper Hamilton's Boston office.  (See Pl. Opp. Mem. at 5-6).

publication, had contractual and business relationships with several United States entities, loaned $350,000 to Colorado company, engaged in banking related activities with four New York banks, and was a party to a Florida lawsuit); <u>Glater v. Eli Lilly & Co.</u>, 744 F.2d 213, 214-15, 217 (1st Cir. 1984) (no general jurisdiction over defendant that regularly advertised products in forum and employed eight sales representatives, including two forum residents, to solicit orders within the forum). The plaintiff has failed to establish that the defendant's contacts with the forum were continuous and systematic such that this court may exercise general personal jurisdiction over Norman.

### C.    <u>Specific Jurisdiction Analysis</u>

Where, as here, the defendant is not subject to general personal jurisdiction, the district court may nevertheless exercise specific jurisdiction, provided the plaintiff is able to satisfy the three-prong test employed by the Federal Circuit. Accordingly, "the plaintiff must show that the defendant purposely directed its activities at residents of the forum and that the plaintiff's claim arises from or relates to those activities. In addition, the plaintiff must satisfy the court that the assertion of personal jurisdiction under the circumstances is reasonable and fair." <u>Radio Sys. Corp. v. Accession, Inc.</u>, 638 F.3d 785, 789 (Fed. Cir. 2011). "The first two factors correspond to the 'minimum contacts' prong of the <i>International Shoe</i> analysis, and the third factor with the 'fair play and substantial justice' prong." <u>Elecs. for Imaging, Inc.</u>, 340 F.3d at 1350 (quoting <u>Inamed Corp. v. Kuzmak</u>, 249 F.3d 1356, 1360 (Fed. Cir. 2001)). "While the plaintiff bears the burden to establish minimum contacts, upon this showing, defendants must prove that the exercise of

14

jurisdiction is unreasonable." Id. For the reasons described below, this court finds that TomTom has failed to meet its burden of showing that Norman has minimum contacts with Massachusetts. Therefore, it is unnecessary to consider whether this court's exercise of personal jurisdiction over the defendant would be unreasonable.

In the context of cases involving claims for declaratory judgment of non-infringement, the Federal Circuit has held that "not all of a patentee's activities in the forum state are sufficient to create a basis for asserting personal jurisdiction." Radio Sys. Corp., 638 F.3d at 789. Rather, the court has explained "that an action for a declaratory judgment 'arises out of or relates to activities of the defendant patentee in enforcing the patent or patents in suit, and that the relevant inquiry for specific jurisdiction is 'to what extent ... the defendant patentee purposefully directed such enforcement activities at residents of the forum and the extent to which the declaratory judgment claim arises out of or relates to those activities.'" Id. (quoting Avocent Huntsville Corp., 552 F.3d at 1332). "Thus, only those activities of the patentee that relate to the enforcement or defense of the patent can give rise to specific personal jurisdiction for such an action." Id.

The Federal Circuit also has held that the sending of cease and desist letters to alleged infringers is not sufficient enforcement activity to support a finding of specific jurisdiction; rather the defendant must have "engaged in 'other activities' that relate to the *enforcement* or the *defense of the validity* of the relevant patents." Avocent Huntsville Corp., 552 F.3d at 1334 (emphasis in original). Examples of such "other" activities "include initiating judicial or extra-judicial patent enforcement within the forum or

entering into an exclusive license agreement or other undertaking which imposes

enforcement obligations with a party residing or regularly doing business in the forum."

Id.  Accordingly, the Federal Circuit has determined that specific jurisdiction exists in

various situations where the defendant entered into exclusive license agreements with

residents of or companies doing business in the forum, as well as in cases where the

defendant files a lawsuit in the forum in order to enforce the patent that is the subject of

the declaratory judgment action.  See id. at 1334-35 (citing cases).   Neither of those

situations is present in this case, however, and TomTom has not established that Norman

engaged in activities in Massachusetts that "relate to the enforcement or the defense of the

validity of the relevant patents."  Id. at 1334 (emphasis omitted).  Merely suing a resident

of Massachusetts in another forum is not sufficient.

TomTom argues that Norman's infringement action against it in Texas, and its

use of a Boston law firm to carry out its patent enforcement litigation in Texas and to

defend its lawsuit in California, are sufficient to satisfy the test for specific personal

jurisdiction.  (Pl. Mem. at 4-8).  However, this court finds that under the controlling

authority of the Federal Circuit, such activity does not establish the minimum contacts

necessary to confer specific jurisdiction.  It is undisputed that all of Norman's

enforcement litigation occurred outside of Massachusetts.  Thus, there are no allegations

that Norman filed any infringement claims here or that it otherwise took steps to enforce

its patent rights in the Commonwealth.  The fact that Norman's Massachusetts law firm

was identified in litigation pending in California as a location where documents were

located does not alter the fact that Norman's enforcement actions and defense of patent litigation took place in another forum. While the Federal Circuit has held that "enforcement proceedings involving the same patent in the same court" constitute "a significant contact with the forum materially related to the enforcement of the relevant patent," it has also expressly held that those contacts only establish personal jurisdiction in the state where the enforcement proceedings were brought. Avocent Huntsville Corp., 552 F.3d at 1338-39. The filing of a suit in one state does not subject a party "to specific personal jurisdiction everywhere else." Id. at 1339 (finding no personal jurisdiction where defendant's enforcement activities took place outside the forum state, and plaintiff failed to allege that defendant had attempted to enforce its patents-in-suit in any court in the forum). See also Radio Sys. Corp., 638 F.3d at 792 ("We made clear in *Avocent* that enforcement activities taking place outside the forum state do not give rise to personal jurisidiction in the forum, and that decision is controlling here."). Therefore, even if it were assumed that all of Norman's out-of-state litigation involved the Patents-in-Suit, a fact that has not been established on the record before this court, such activity does not give rise to specific personal jurisdiction over Norman in this court.

The fact that Norman retained Massachusetts counsel in order to enforce and defend its patent rights does not alter this court's conclusion that personal jurisdiction is lacking. As described above, there is no allegation that Pepper Hamilton represented Norman in connection with any Massachusetts litigation, and TomTom has not shown that Pepper Hamilton took any other steps, or engaged in any communications, aimed at

enforcing Norman's patent rights here. At most, Pepper Hamilton may have done research or drafted pleadings, or engaged in other legal work in Massachusetts for use in Norman's out-of-state litigation. Since the sending of cease and desist letters into a forum state is insufficient to satisfy due process requirements, it is impossible to conclude that preparing materials in Massachusetts for filing elsewhere constitutes sufficient contacts to establish jurisdiction in Massachusetts. There are no allegations that Pepper Hamilton even engaged in any direct communications with any residents of Massachusetts in connection with its representation of Norman. Contrast Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1350-51 (Fed. Cir. 2003) (finding that out-of-state defendants' contacts were "purposely directed" at California where defendants, who were prosecuting a patent, hired California counsel to engage in numerous communications with California plaintiff regarding the progress of defendants' patent application, solicited California plaintiff's purchase of their business, sent two representatives to plaintiff's California facility to demonstrate technology and, after the patent issued, threatened plaintiff with infringement litigation). TomTom has not identified any cases which hold that in a declaratory judgment action for non-infringement, a client's jurisdiction can be established merely on the basis of where its counsel is located, and no such cases have been found. Therefore, Norman's use of Boston counsel does not subject it to personal jurisdiction in this court.

Notwithstanding the fact that Federal Circuit law governs this litigation, TomTom urges this court to adopt the reasoning of the court in Pharmanet, Inc. v. DataSci Ltd. Liab. Co., an unreported case out of the District of New Jersey. (Pl. Opp. Mem. at 7-8). In that

18

case, the court found that the defendant's conduct in filing an infringement action against a New Jersey company in another state constituted sufficient contacts with the forum to justify the exercise of personal jurisdiction over it.  <u>Pharmanet, Inc.</u>, Civ. No. 08-2965(GEB), 2009 WL 396180, at *13 (D.N.J. Feb. 17, 2009) (unpub. op.).  The court reasoned that in connection with its lawsuit, "it is likely that Defendant took steps to investigate and compile its case against [the New Jersey company] prior to the suit's filing in order to comply with its obligations under Federal Rule of Civil Procedure 11(b)."  <u>Id.</u> It concluded, based on those contacts, that the defendant "purposefully directed activities at residents of the forum state."  <u>Id.</u> (quotations and citations omitted).

The court's decision in <u>Pharmanet</u> is inconsistent with the Federal Circuit's holding that "enforcement activities taking place outside the forum state do not give rise to personal jurisdiction in the forum[.]"  <u>Radio Sys. Corp.</u>, 638 F.3d at 792.  While perhaps not expressly stated, since the Federal Circuit has expressly ruled that the sending of a cease and desist letter into a forum does not establish jurisdiction in that forum, it is obvious that the relevant "enforcement activities" are where the litigation was taking place, not where the behind-the-scenes work was being done.  <u>See</u> <u>Avocent Huntsville Corp.</u>, 552 F.3d at 1339 (finding that Alabama court had no personal jurisdiction over out-of-state defendant where plaintiff made no allegation that defendant attempted to enforce its patents in any Alabama court).   Because Federal Circuit law is controlling here,

TomTom has failed to make a prima facie showing that Norman is subject to personal jurisdiction in Massachusetts.[5]

### D. TomTom's Request for Jurisdictional Discovery

Finally, TomTom requests leave to take jurisdictional discovery in the event this court finds that additional facts are required to establish personal jurisdiction over Norman in Massachusetts. (Pl. Opp. Mem. at 6 n.2). "[A] diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of *in personam* jurisdiction *may* well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense." Swiss Am. Bank, 274 F.3d at 625 (quotations and citations omitted).[5] "However, 'that entitlement is not absolute.'" Id. (quoting Sunview Condominium Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962, 964 (1st Cir. 1997)). "[E]ven when the plaintiff has been diligent and has made a colorable claim for personal jurisdiction, the district court still has 'broad discretion to decide whether discovery is required.'" Id. at 625-26 (quoting Crocker v. Hilton Int'l Barb., Ltd., 976 F.2d 797, 801 (1st Cir. 1992)). In the instant case, TomTom has failed to make a

---

[5] TomTom's reliance on other cases outside the Federal Circuit are similarly unpersuasive in light of the fact that Federal Circuit law is controlling in this case. (See Pl. Notice of Supplemental Authority (Docket No. 23), and cases cited).

[5] Procedural issues such as whether discovery is appropriate in the first instance, are governed by "the law of the regional circuit in which the district court sits." Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp., 395 F.3d 1315, 1322 (Fed. Cir. 2005). See also Autogenomics, Inc., 566 F.3d at 1023 n.2 (explaining that decisions as to whether a plaintiff made a sufficient threshold showing to merit jurisdictional discovery are controlled by the law of the regional circuit, whereas questions as to the relevance of a request for jurisdictional discovery are governed by the law of the Federal Circuit).

colorable claim for personal jurisdiction. As the foregoing analysis demonstrates, TomTom's arguments regarding Norman's contacts with the forum are insufficient to meet the relatedness prong of the test for specific jurisdiction or to show that Norman's contacts with Massachusetts are such that it could be subject to general jurisdiction. Therefore, TomTom has not shown that discovery is warranted before this court renders a final determination as to whether Norman is subject to personal jurisdiction. See id. at 626 (finding that plaintiff had not clearly presented a colorable claim for personal jurisdiction sufficient to warrant additional discovery where plaintiff failed to make an adequate showing on the relatedness prong of the specific jurisdiction analysis).

## IV. CONCLUSION

For all the reasons detailed herein, this court concludes that Norman's contacts with Massachusetts are not adequate to subject it to personal jurisdiction in this court. Accordingly, this court recommends to the District Judge to whom this case is assigned that "Norman IP Holdings, LLC's Motion to Dismiss for Lack of Personal Jurisdiction" (Docket No. 8) be ALLOWED.[6]

---

[6] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605

/ s / Judith Gail Dein
                    Judith Gail Dein
                    United States Magistrate Judge

(1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).